**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| CHEETAH OMNI LLC, | CIVIL ACTION NO. 6:08-CV-279 (LED) |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| SAMSUNG ELECTRONICS AMERICA, INC., and MITSUBISHI DIGITAL ELECTRONICS AMERICA, INC. | |
| Defendants. | |

**DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S P.R. 3-2(b) STATEMENT AND
COMPEL INTERROGATORY RESPONSE**

## TABLE OF CONTENTS

**Page**

I.    Introduction ........................................................................................................ 1

II.   Background ........................................................................................................ 3

    A.    Cheetah Refused to Make a Proper P.R. 3-2(b) Disclosure................................ 3

    B.    Cheetah Refuses to Provide Support for the Priority Date It Asserts ................. 5

III.  Argument ........................................................................................................... 8

    A.    Cheetah Should Be Precluded from Relying on Redacted P.R. 3-2(b)
          Information ............................................................................................. 8

          1.    P.R. 3-2(b) Required Cheetah to Make Its Disclosure
               Contemporaneously with Its Infringement Contentions .......................... 8

          2.    Cheetah Impermissibly Seeks to Reserve the Ability to Disclose
               Unredacted P.R. 3-2(b) Documents at a Time of Its Choosing................. 9

    B.    Cheetah Should Be Compelled to Provide Specific Support for the Earlier
          Priority Dates It Asserts............................................................................ 12

CONCLUSION ............................................................................................................ 15

CERTIFICATE OF SERVICE ....................................................................................... 17

CERTIFICATE OF CONFERENCE ............................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Conkling v. Turner,*
883 F.2d 431 (5th Cir. 1989) ............................................................................... 11

*In re EchoStar Commc'ns Corp.,*
448 F.3d 1294 (Fed. Cir. 2006) ........................................................................... 11

*In re Spalding Sports Worldwide, Inc.,*
203 F.3d 800 (Fed. Cir. 2000) ............................................................................... 4

*Lockwood v. Am. Airlines,*
107 F.3d 1565 (Fed. Cir. 1997) ........................................................................... 13

*McKesson Info. Solutions LLC v. Epic Sys. Corp.,*
242 F.R.D. 689 (N.D. Ga. 2007) ......................................................................... 14

*Nike, Inc. v. Addidas Am., Inc.,*
479 F. Supp. 2d 664 (E.D. Tex. 2007) ................................................................... 9

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,*
467 F.3d 1355 (Fed. Cir. 2006) ............................................................................. 9

*S & W Enters., L.L.C. v. Southtrust Bank of Ala.,*
*NA,* 315 F.3d 533 (5th Cir. 2003) ....................................................................... 10

*SoftVault Sys., Inc. v. Microsoft Corp.,*
No. 2:06-cv-16, 2007 WL 1342554 (E.D. Tex. May 4, 2007) ........................... 2, 10, 11, 12

*Tech. Licensing Corp. v. Videotek, Inc.,*
545 F.3d 1316 (Fed. Cir. 2008) ........................................................................... 13

*Vas-Cath, Inc. v. Mahurkar,*
935 F.2d 1555 (Fed. Cir. 1991) ........................................................................... 13

STATUTES

35 U.S.C. § 102 ........................................................................................................ 9

35 U.S.C. § 112 .................................................................................................... 7, 13

35 U.S.C. § 120 .................................................................................................. 12, 13

## <u>TABLE OF AUTHORITIES</u>

### <u>(Continued)</u>

**Page(s)**

**RULES**

Fed. R. Civ. P. 26(b)(1) ................................................................................................... 14

Patent Rule 3-1 ................................................................................................................. 14

Patent Rule 3-1(e).................................................................................................... *passim*

Patent Rule 3-2(b) ................................................................................................... *passim*

la-1026818

I.    **Introduction.**

Plaintiff Cheetah Omni LLC ("Cheetah") seeks to withhold key information about the invention dates for the patents-in-suit, while reserving the right to disclose such information later in the case, resulting in substantial and ongoing prejudice to Defendants in developing their invalidity case. Specifically, Cheetah has refused to comply with Patent Rule 3-2(b), which requires the production of "[a]ll documents evidencing the conception, reduction to practice, design, and development of each claimed invention," *id.*, where such documents were created before a plaintiff's claimed priority date. Cheetah has redacted all of its Patent Rule 3-2(b) documents, claiming that the documents are privileged (except for text bearing the names of the inventors and a company, certain initials, and a dated witness signature). Rather than rest on that privilege claim, however, Cheetah makes a reservation in its infringement contentions: "*[a]t the present time*, priority earlier than [the Plaintiff's priority claim to certain patent applications] is *not at issue*." (Ex. 1) (emphases added).[1]

Through the course of several meet and confer conferences and related letters, Cheetah has explained that it seeks to reserve the ability to "waive" its privilege claim "*[d]epending* on the effective date of the prior art *the defendants rely on* to establish invalidity." (Ex. 2.) (emphases added). Cheetah would, at that future point, seek to "swear behind the reference(s) the defendants rely upon" and only then "disclose the [complete] factual circumstances surrounding Cheetah's conception and reduction to practice." (*Id.*)

Simply put, Cheetah has taken the position that it may wait for Defendants' invalidity contentions (which were served in January 2009), spend an indefinite amount of time evaluating

---

[1] All exhibits are attached to the Attorney Declaration of Wendy Ray.

Defendants' invalidity contentions, and then reveal the unredacted documents supporting the invention date at some future time of its choosing.  The Patent Rules and the doctrine against "sword/shield" uses of privilege, however, plainly do not allow for such gamesmanship.

As the Court set out in detail in barring a similarly late disclosure of a priority date in *SoftVault Sys., Inc. v. Microsoft Corp.*, No. 2:06-cv-16, 2007 WL 1342554 (E.D. Tex. May 4, 2007), such a failure to timely disclose a plaintiff's position on the invention date greatly prejudices Defendants' development of their invalidity case, and should be barred.  The Court should thus strike Cheetah's reservation in its Infringement Contentions and preclude Cheetah from later relying upon redacted portions of its P.R. 3-2(b) disclosure.  At the least, if Cheetah is permitted to make a late disclosure of its unredacted P.R. 3-2(b) documents, Cheetah should be compelled to make that disclosure now in order to avoid further prejudice to Defendants.

Additionally, Cheetah has refused to properly answer a November 2008 interrogatory from Mitsubishi regarding Cheetah's priority date claim in its infringement contentions.[2] Cheetah's infringement contentions claim priority for the asserted claims to certain parent and grand-parent patent applications.  Mitsubishi requested that Cheetah provide specific support for its priority claims to these applications in a claim-chart format.  For months, including the time period before Defendants' January 2009 invalidity contentions, Plaintiff refused to answer, arguing that Defendants first had to "ma[ke] a *prima facie* case of invalidity that would necessitate an earlier priority date than the filing date of the asserted patents."  (Ex. 2.)  This is plainly not how discovery works.  It is akin to refusing to provide sales information because a party has not yet proven entitlement to damages.

---

[2] As the interrogatory was propounded by Mitsubishi, Mitsubishi is the movant for this portion of the motion.

Eventually, Plaintiff provided an answer in which it simply cited massive page ranges in its patent applications for each asserted claim (*e.g.*, 95 pages in their entirety allegedly support one claim). This is not a meaningful response, as it does not identify, in a claim-chart format for the asserted claims, the specific support in prior applications for Cheetah's priority claim.

## II.    Background.

### A.    Cheetah Refused to Make a Proper P.R. 3-2(b) Disclosure.

Patent Rule 3-1(e) requires that a plaintiff set forth, "[f]or any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled." *Id.* Cheetah set forth the following priority claim:

> The asserted claims of the '862 patent are each entitled to the December 22, 2000 priority date of U.S. Patent No. 6,721,475. The asserted claims of the '714 patent are each entitled to the February 2, 2001 priority date of U.S. Patent No. 6,721,473.

(Ex. 1.)

Building on the requirements of Rule 3-1(e), Patent Rule 3-2(b) further requires a plaintiff to produce with its infringement contentions:

> [a]ll documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to P. R. 3-1(e), whichever is earlier[.]

*Id.* Rather than produce "[a]ll documents evidencing the conception, reduction to practice, design, and development of each claimed invention," *id.*, Cheetah produced a heavily redacted version of such documents, asserting that its P.R. 3-2(b) documents are privileged.[3]

---

[3] 71 of the 74 pages produced by Cheetah, including what appear to be laboratory notebook pages, are entirely redacted, excepting what appear to be, in some cases, initials, which are difficult to read on the copies provided by Cheetah. (Ex. 3.) The three pages that are not entirely (continued…)

The present dispute centers on a reservation Cheetah has made in its infringement contentions regarding its Rule 3-2(b) disclosure—a reservation Cheetah has further explained during the parties' meet and confer discussions.  While heavily redacting its P.R. 3-2(b) documents, Cheetah simultaneously asserted the following in its infringement contentions:

> *At the present time*, priority earlier than that set forth in section I(e) above is *not at issue*. Nonetheless, redacted versions of the invention records for U.S. Patent Nos. 6,721,473 and 6,721,475 are being produced concurrently herewith. (CO 3227 - 3300) The substance of the invention records is protected from disclosure by the attorney-client privilege. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000).

(Ex. 1) (emphases added).  That is, Cheetah suggested that the scope of a plaintiff's duty to produce its P.R. 3-2(b) documents turns on future events in the case.  In Cheetah's view, its duty to comply with Rule 3-2(b) turned on what was "at issue" when it filed its infringement contentions, and Rule 3-2(b) did not require Cheetah to make a full and fair disclosure, on the date its infringement contentions were due, of its P.R. 3-2(b) documents.

When Mitsubishi propounded on November 26, 2008—prior to the January 13, 2009 deadline for Defendants' invalidity contentions—an interrogatory inquiring about the circumstances of the purported inventions in this case, Cheetah initially refused to answer because Defendants' invalidity contentions were not yet due.  (Exs. 4, 5.)  Eventually, on March 12, 2009, writing two months after Defendants served their invalidity contentions, Cheetah explained its failure to produce unredacted P.R. 3-2(b) documents as follows:

---

redacted contain only the inventors' names, a company name and address, and a dated witness signature.  Pursuant to the Court's October 23, 2008 Docket Control Order, privilege logs are due on May 18, 2009, at which time Cheetah will presumably disclose the grounds for its substantive privilege claim, and Defendants will determine whether to challenge that designation.  Whether or not the documents are indeed privileged is thus not relevant to the present motion.

In the event the defendants allege a non-§ 102(b) prior art invalidity defense, and in the event Cheetah intends to swear behind the reference(s) the defendants rely upon, Cheetah will disclose the factual circumstances surrounding Cheetah's conception and reduction to practice. Cheetah met its disclosure obligations pursuant to the Patent Rules by producing the documents surrounding Cheetah's conception. Those documents were privileged attorney-client communications, and were redacted accordingly. *Depending on the effective date of the prior art the defendants rely on to establish invalidity*, Cheetah will consider waiving that privilege. It is unreasonable for Cheetah to arbitrarily waive privilege on these documents without a necessity for doing so, however.

(Ex. 2) (emphasis added). On March 24, Cheetah wrote again to indicate that "[i]f Cheetah intends to rely on privileged materials at trial, Cheetah will disclose those as well." (Ex. 6.) That is, Cheetah claimed the ability to simply waive its privilege claim over the P.R. 3-2(b) documents at any time—even as late as preparation for trial.

Defendants notified Cheetah on several occasions that: (1) this was an improper sword-and-shield use of privilege; and (2) Patent Rule 3-2(b) required Cheetah to make a proper disclosure—at the time Cheetah filed its infringement contentions—of any P.R. 3-2(b) documents it would seek to rely upon. (Exs. 7-9.) Nonetheless, Cheetah continues to take the position that it was not necessary for Cheetah to disclose unredacted P.R. 3-2(b) documents on the date its infringement contentions were due, and that Cheetah can simply elect, after service of Defendants' invalidity contentions, whether to waive its privilege claim and make a full, albeit extremely late, Rule 3-2(b) disclosure—having had the benefit of reviewing Defendants' invalidity position. (Ex. 10.)

      B.    <u>Cheetah Refuses to Provide Support for the Priority Date It Asserts</u>.

As discussed above, in its Patent Rule 3-1 disclosures, Cheetah asserted that the claims at issue are entitled to claim priority to earlier parent and grant-parent patent applications. (Ex. 1.)

la-1026818

Mitsubishi's November 26, 2008 interrogatory, served significantly in advance of the deadline

for Defendants' January 13, 2009 invalidity contentions, requested:

> Separately for each Accused Mitsubishi Product and for each
> asserted claim of the Patents-in-Suit for which Cheetah claims the
> benefit of an earlier effective filing date, and using a claim chart
> format, provide the purported support by page and line number in
> each prior application to which priority is claimed.

(Ex. 4.)

In its response, Cheetah again asserted priority to earlier applications, but refused to

provide specific support for its priority claims:

> In addition to Cheetah's General Objections, Cheetah objects to
> this interrogatory as premature because defendants have not
> asserted an invalidity defense which would require Cheetah to
> claim priority to an earlier effective filing date.
>
> Subject to these objections, the asserted '862 patent is a
> continuation of U.S. Patent No. 6,721,475 filed December 22,
> 2000 and has an identical detailed description. The asserted '714
> patent claims priority to U.S. Patent No. 6,721,473 filed
> February 2, 2001 and has an identical written description.
> Accordingly, all asserted claims have identical support in their
> respective earlier-filed applications and no chart is necessary.

(Ex. 5.) That is, Cheetah refused to provide discovery on its priority claim because, despite

Defendants having asserted invalidity in their Answers, Cheetah believed it could wait until

some later stage of the case. Cheetah further asserted that its patents either have an "identical

detailed description" or an "identical written description" to certain earlier applications, and

therefore no specific answer to the interrogatory was required.

On January 26, 2009, Mitsubishi noted that it had served its invalidity contentions, so

Cheetah could no longer claim the interrogatory was premature. (Ex. 11.) Mitsubishi also noted

that, contrary to Cheetah's assertion, the written descriptions are not identical in all respects and

that it is entitled to a full and complete response that identifies specific support by page and line

number in each prior application to which priority is claimed for each of the asserted claims. (*Id.*; *cf.* '714 Patent, Ray Decl., Ex. 12 & '473 Patent, Ray Decl., Ex. 13.)

On March 10, 2009, the parties met and conferred. (Ray Decl. ¶ 17.) During the conference, Defendants asked whether Cheetah would commit not to rely later on any non-identical portions of the patent for support given its position. (*Id.*) Cheetah no longer embraced its former position. (*Id.*) Cheetah ultimately offered to give column and line number support from the applications to which priority is claimed for the terms identified in the § 112 (written description) portion of Defendants' invalidity contentions. (*Id.*)

On March 12, 2009, Cheetah wrote to Defendants, but did not mention its compromise proposal. (Ex. 2.) Instead, Cheetah argued that it need not provide support for its priority claim until Defendants have first "made a *prima facie* case of invalidity that would necessitate an earlier priority date than the filing date of the asserted patents." (*Id.*) Cheetah indicated that it would, at present, only "identify exemplary written description support for" terms Defendants alleged lacked § 112 support in their invalidity contentions. (*Id.*)

With respect to Cheetah's first argument, Mitsubishi noted that its January 13 invalidity contentions "cit[e] prior art that antedates the filing dates of the patents-in-suit." (Ex. 7.) In any event, Mitsubishi noted that Cheetah's position "confus[es] relevance to discovery with burdens of proof and production." (*Id.*) With respect to Cheetah's second argument, Mitsubishi noted that this confuses § 112 written description support with the priority claim at issue in the interrogatory. (*Id.*) Mitsubishi indicated that it was entitled to a response "identif[ying] all specific support by column and line number in each prior application to which priority is claimed", but expressed willingness to accept Cheetah's earlier proposal regarding an answer with respect to the claim terms identified as lacking § 112 support. (*Id.*)

On March 24, Cheetah wrote to again make a version of its "*prima facie*" case argument as a ground for refusing discovery. (Ex. 6.) On March 25, Cheetah nonetheless served a supplemental response to interrogatory 1. (Ex. 14.) That response, however, provided only pointlessly broad citations that fail to show how the earlier-filed applications provide support for each limitation of the four asserted claims. (*Id*.) For example, Cheetah set out for Claim 15 citations to 95 and 108 pages, in their entirety, of prior applications. (*See id*. at 2.)

On March 30, the parties again met and conferred. (Ray Decl. ¶ 19-20.) Mitsubishi explained that Cheetah's supplemental response was inadequate because it failed to provide specific support in a claim-chart format for the asserted claims and their elements. (*Id.*) Cheetah, however, refused to provide specific support because, in its view, the specifications are "identical for the most part" and the claimed interrogatory does not call for specific support for the claim elements—despite the interrogatory's clear request for a response in a claim chart format and Mitsubishi's request that Cheetah employ such a format. (*Id.*)

### III.  Argument.

#### A.  Cheetah Should Be Precluded from Relying on Redacted P.R. 3-2(b) Information.

##### 1.  *P.R. 3-2(b) Required Cheetah to Make Its Disclosure Contemporaneously with Its Infringement Contentions.*

Just as Patent Rule 3-1(e) requires a party to set out, at the beginning of the case, "the priority date to which each asserted claim allegedly is entitled" for "any patent that claims priority to an earlier application," *id.*, Patent Rule 3-2(b) requires a party to produce all documents "evidencing the . . . development of each claimed invention, which were created on or before the . . . the priority date identified pursuant to P. R. 3-1(e) "—that is, documents that a party will use to establish an invention date—with its infringement contentions.

A party's invention date is key, because it determines under the various subsections of 35 U.S.C. § 102 what constitutes invalidating prior art.[4]  Under the Patent Rules, Defendants were supposed to have notice of Cheetah's P.R. 3-2(b) documents *prior to* Defendants preparing and serving their invalidity contentions.

The Patent Rules seek to balance "the tension between the necessity for orderly and complete discovery on the one hand, and the natural desire of litigants to attain important tactical advantages by delaying disclosure of key elements of their case."  *Nike, Inc. v. Addidas Am., Inc.*, 479 F. Supp. 2d 664, 666 (E.D. Tex. 2007).  The Patent Rules, including Rule 3-2(b), are "'designed specifically to require parties to crystallize their theories of the case early in the litigation . . . .'"  *Id.* (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (quotation marks omitted)).  Allowing late disclosure of a key item called for in the Patent Rules "would . . . encourage[] [parties] to adopt a 'rolling' approach to infringement and invalidity contentions in the hope of hiding their true intentions until late in a case.  This would thwart the purpose of the local patent rules."  *Id.* at 669-70.

2. *Cheetah Impermissibly Seeks to Reserve the Ability to Disclose Unredacted P.R. 3-2(b) Documents at a Time of Its Choosing.*

Contrary to Cheetah's repeated claim that it may "waive" its privilege claim "*[d]epending* on the effective date of the prior art *the defendants rely on* to establish invalidity" (Ex. 2) (emphases added), Cheetah cannot simply wait for Defendants' invalidity contentions, evaluate Defendants' invalidity position, and then reveal the basis for any invention date.

---

[4] *See, e.g.*, 35 U.S.C. § 102 ("A person shall be entitled to a patent unless--(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, *before the invention thereof* by the applicant for patent[.]") (emphasis added).

9

Instead, deciding whether to allow a late amendment of infringement contentions is "akin to deciding whether the pleading deadlines of a scheduling order should be extended." *Id.* at 668.

As this Court has explained in resolving a dispute nearly on all fours within this one, "[a] party seeking leave to amend a court's scheduling order must show 'good cause.'" *SoftVault Sys., Inc. v. Microsoft Corp.*, No. 2:06-cv-16, 2007 WL 1342554, at *1 (E.D. Tex. May 4, 2007). In *SoftVault*, the Court examined a party's "motion to amend its infringement contentions to change the asserted priority date of the claims at-issue," as set forth in the party's infringement contentions pursuant to Patent Rule 3-1(e). *Id.* The plaintiff in *SoftVault* waited "nearly six months" before seeking leave to amend its infringement contentions and assert an earlier priority date. *Id.* In this case, Cheetah's Patent Rule 3-2(b) disclosure was due on October 10, 2008, and Cheetah continues to take the position that, with *more than* six months having elapsed, it can elect to waive privilege and make a full and fair disclosure of its P.R. 3-2(b) documents at some later point in the case.

*SoftVault* set forth four factors to consider in allowing such a late modification:

> (1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice.

*Id.* (citing *S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 533-36 (5th Cir. 2003). With respect to the first factor, Cheetah deliberately failed to meet the deadline. Instead, Cheetah seeks to rewrite the disclosure requirement by first having the benefit of evaluating Defendants' invalidity case. Undoubtedly, any plaintiff might prefer to hide its P.R. 3-2(b) documents until the late stages of a defendant's invalidity case. The Patent Rules clearly require compliance with Rule 3-2(b), however, *prior* to Defendants serving their invalidity contentions. This requirement makes sense, as a Plaintiff's Rule 3-2(b) disclosure helps define what, exactly,

10

constitutes invalidating art that should be set out in Defendants' invalidity contentions, by providing any evidence of an invention date predating Plaintiff's Rule 3-1(e) disclosure.

Cheetah has also taken the position that it is proper for Cheetah to claim privilege over its P.R. 3-2(b) documents, while reserving the right to "waive" privilege and comply with Rule 3-2(b) at a later date in the case. Cheetah's strategy, however, constitutes a classic, impermissible "sword/shield" use of privilege. *See Conkling v. Turner*, 883 F.2d 431, 434-35 (5th Cir. 1989) ("The attorney-client privilege was intended as a shield, not a sword.") (quotation marks omitted); *accord In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) ("a district court should . . . prevent sword-and-shield litigation tactics" with regard to work-product immunity assertions). Cheetah's effort to use privilege in this impermissible fashion only further demonstrates the need to preclude Cheetah from relying on any aspects of its P.R. 3-2(b) documents that it refused to disclose at the time its infringement contentions were due.

With respect to the second factor—the importance of the thing to be excluded, Cheetah has refused to disclose its unredacted P.R. 3-2(b) documents, making it impossible to know the importance of what Cheetah has hidden—an inability that results solely from Cheetah's strategic choice to use privilege as a shield and to not disclose the unredacted documents.

The third factor—prejudice—is critical in this case. Cheetah's P.R. 3-2(b) documents should have been disclosed in advance of Defendants having prepared their invalidity contentions. If Cheetah is permitted to reserve the right to disclose its unredacted P.R. 3-2(b) documents later in the case and then "swear behind the reference(s) the defendants rely upon" (Ex. 2), this could change the very definition of what constitutes prior art. As the Court noted in *SoftVault* with respect to a similar effort to assert a priority claim late in the litigation:

> Allowing SoftVault to assert an earlier priority date at this time would prejudice Microsoft by forcing Microsoft to incur additional

11

> expense in reassessing its invalidity analyses based on an earlier
> priority date. Microsoft would also likely lose the ability to use
> references that are prior art under the currently asserted priority
> date.

2007 WL 1342554 at *2. Just as in *SoftVault*, it would tremendously prejudice Defendants to have to reassess their invalidity analyses based upon a late disclosure of P.R. 3-2(b) documents by Cheetah, which could change the definition of what constitutes prior art.

The availability of a continuance—the fourth factor discussed in *SoftVault*—also weighs against allowing Cheetah to belatedly establish an invention date. As the Court explained in *SoftVault*, "[g]ranting a continuance would allow" Defendants "time to reassess [their] invalidity contentions[;] [h]owever, a continuance would not cure prejudice to" Defendants "arising from a narrowed body of prior art." The plaintiff "had access to the earlier application"—or in this case, its own P.R. 3-2(b) documents—"before filing suit and has not shown good cause to alter the asserted patent's priority date"—or in this case, the asserted patents' invention dates. *Id.* at *2.

Just as was the case with respect to a priority claim in *SoftVault*, Cheetah should be precluded from relying upon any aspect of its P.R. 3-2(b) documents that was not disclosed pursuant to Rule 3-2(b). Cheetah strategically chose to redact its P.R. 3-2(b) documents, and must be bound by that choice. Cheetah's statements in its infringement contentions purporting to allow it to produce later its P.R. 3-2(b) documents should be struck. The alternative would result in extreme prejudice to Defendants. At the least, if Cheetah is permitted to make a late disclosure of its unredacted P.R. 3-2(b) documents, Cheetah should be compelled to make that disclosure now in order to avoid further prejudicing Defendants.

    B.    <u>Cheetah Should Be Compelled to Provide Specific Support for the Earlier Priority Dates It Asserts</u>.

Cheetah's priority claim helps determine what constitutes prior art. *See* 35 U.S.C. § 120. Priority can only be established by determining whether the subject matter of a claim was

previously "disclosed in the manner provided by the first paragraph of section 112 of this title[.]" *Id.* § 120.  Section 112 requires, among other things, that "the specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same . . . ." 35 U.S.C. § 112, ¶ 1.  Where, as here, "a patentee seeks the benefit of the filing date of an earlier filed application [under 35 U.S.C. § 120], compliance with the written description requirement [of § 112] may turn on whether the disclosure of the earlier application provides 'adequate support' for the claims at issue." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1324 (Fed. Cir. 2008) (citation omitted); *see also, e.g.*, *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1562 (Fed. Cir. 1991) (specification of the parent application must have "claim-supporting" language which provides a description of the claimed invention to meet the written description requirement); *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought").  Thus, to demonstrate support for its priority claim, Cheetah must "produc[e] sufficient evidence and argument to show that an ancestor to the [patents in suit] . . . contains a written description that supports all the limitations of [the asserted claims]." *Videotek*, 545 F.3d at 1327 (emphasis added).

As discussed above, initially Cheetah completely refused to provide any support for its priority claim on the basis of its "*prima facie* case" argument—that Defendants must "ma[ke] a *prima facie* case of invalidity that would necessitate an earlier priority date than the filing date of the asserted patents." (Ex. 2.)  Cheetah later provided an unreasonable response that simply cites to broad page ranges of prior applications (*e.g.*, 95 and 108 pages), such as:



| '862 PATENT CLAIM NUMBER | U.S. PAT. APP. NO. 10733007 | U.S. PAT. APP. NO. 09746813 |
|---|---|---|
| Claim 15 | Page 1, line 16 - page 95, line 15; Page 103, lines 1-21; All Drawing Figures | Page 1, line 14 - Page 108, line 21; All drawing Figures |

(Ex. 14 at 2.)

Discovery regarding specific support for the priority date Cheetah has asserted in its Patent Rule 3-1 disclosures and in its interrogatory response is clearly relevant to whether Cheetah can claim an earlier priority date and to what constitutes prior art. *See McKesson Info. Solutions LLC v. Epic Sys. Corp.*, 242 F.R.D. 689, 692 (N.D. Ga. 2007) (compelling interrogatory response because it was relevant to whether the patentholder could claim priority); *see also* Fed. R. Civ. P. 26(b)(1) (a party is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense").

As the Court in *McKesson* explained when a patentholder tried the same tactic as Cheetah, "[b]ecause the threshold question of whether the prior art is in fact 'prior' depends upon the . . . patent's priority date, the information [defendant] seeks in Interrogatory No. 1 is unquestionably relevant to a 'claim or defense,' and thus [the patentholder] may not refuse to produce it." *Id.* at 692. As *McKesson* further noted, it is improper to resist such discovery on the ground that Defendants must "ma[ke] a *prima facie* case of invalidity that would necessitate an earlier priority date than the filing date of the asserted patents" (Ex. 2):

> Nowhere in the Federal Rules of Civil Procedure is it required that a party who carries the ultimate burden on an issue at trial must establish a *prima facie* case before it is entitled to discover information the other party may use to rebut the *prima facie* case. Quite the opposite, the rules contemplate that a party receive this information up front, during discovery, so that when the time comes to discharge its burden it has the ammunition necessary to do so.

*McKesson*, 242 F.R.D. at 692 (citation omitted). Cheetah's present gamesmanship flouts the

la-1026818

letter and spirit of the Federal Rules.  Cheetah should be required to provide a good-faith answer identifying, in a claim-chart format, any specific support in prior applications for the asserted claims.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court strike from Cheetah's infringement contentions its statement purporting to allow late disclosure of unredacted P.R. 3-2(b) documents and preclude Cheetah from using such unredacted documents.

Mitsubishi further requests that the Court compel Cheetah to answer Mitsubishi's interrogatory by providing in a claim-chart format specific support for the P.R. 3-1(e) priority claims Cheetah asserts.

Dated: May 4, 2009

Respectfully submitted,

s/ Wendy J. Ray

Vincent J. Belusko (admitted *pro hac vice*)
(Lead Attorney)
Nicole M. Smith (admitted *pro hac vice*)
Wendy J. Ray (admitted *pro hac vice*)
Morrison & Foerster LLP
555 West Fifth Street, Suite 3500
Los Angeles, California 90013
Phone: (213) 892-5200
Fax: (213) 892-5581
Email:      vbelusko@mofo.com
              nsmith@mofo.com
              wray@mofo.com

Melvin R. Wilcox, III
Yarbrough & Wilcox, PLLC
100 E. Ferguson, Suite 1015
Tyler, Texas 75702
Phone: (903) 595-1133
Fax: (903) 595-0191
Email:      mrw@yw-lawfirm.com

ATTORNEYS FOR DEFENDANT MITSUBISHI
DIGITAL ELECTRONICS AMERICA, INC.

la-1026818

<u>s/ Michael E. Jones (with permission by Wendy J. Ray)</u>

Michael E. Jones (TX Bar No. 10929400)
Allen F. Gardner (TX Bar No. 24043679)
POTTER MINTON
A PROFESSIONAL CORPORATION
110 N. College, 500 Plaza Tower
P.O. Box 359
Tyler, Texas  75710
Tel: (903) 597-8311
Fax: (903) 593-0846
E-mail:    mikejones@potterminton.com
               allengardner@potterminton.com

Richard L. Rainey (DC Bar No. 452996)
(Lead Attorney)
Brian G. Bieluch (NY Bar No. 4196648)
Jeffrey M. Davidson (CA Bar No. 248620)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
Tel:  (202) 662-6000
Fax:  (202) 662-6291
E-mail:    rrainey@cov.com
               bbieluch@cov.com
               jdavidson@cov.com

ATTORNEYS FOR DEFENDANT,
SAMSUNG ELECTRONICS AMERICA, INC.

la-1026818

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 4th day of May 2009.  Any other counsel of record will be served by first class U.S. mail on this same date.

<div align="center" style="margin-left:40%">

s/Wendy J. Ray_____
Wendy J. Ray

</div>

17

## CERTIFICATE OF CONFERENCE

Counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and the motion is opposed.  The personal conferences required by this Rule have been conducted. The last of the conferences was held on Monday, March 30, 2009 and was attended by Thomas A. Lewry, John S. Le Roy, and T. John Ward for Plaintiff and Vincent Belusko, Wendy J. Ray, Richard L. Rainey, Brian Bieluch, Jeffery Davidson, Allen Gardner, Mike Jones, and Melvin Wilcox  for Defendants.  No agreement could be reached because Plaintiff does not agree that it is bound by the redacted version of its P.R. 3-2(b) disclosure served with its infringement contentions in October 2008, and continues to take the position that it may waive privilege and supplement its P.R. 3-2(b) disclosure.  Plaintiff has further agreed that the parties are at an impasse regarding the sufficiency of Plaintiff's response to Mitsubishi's Interrogatory Number 1. Discussions have conclusively ended at an impasse, leaving an open issue for the Court to resolve.


s/Melvin R. Wilcox, III_____          s/Michael E. Jones_____
Melvin R. Wilcox, III                            Michael E. Jones

s/Vincent J. Belusko_____             s/Richard L. Rainey_____
Vincent J. Belusko                               Richard L. Rainey

18